2005 WY 14

**GGV, Appellant (Respondent),**

v.

**JLR, individually and on behalf of RR, a minor child, Appellee (Petitioner).**

No. C–04–7.

Supreme Court of Wyoming.

Feb. 7, 2005.

for failure to pay guardian ad litem (GAL) fees that this Court and the district court had ordered her to pay. We will refer to the later two parties as Appellees. In order to coerce her obedience, the district court ordered that GGV be confined in jail for 180 days. However, that jail sentence was suspended provided that beginning on March 1, 2004, GGV pay at least $100.00 a month toward attorney's fees (until the sum due had been paid in full), and $50.00 a month toward the GAL fees (until that sum due had been paid in full). The payments due on each of the obligations allocated to GGV was to increase to $200.00 (for attorney's fees and costs) and to $100.00 (for GAL fees), if GGV's net monthly income exceeded $750.00 a month. We will set out the details of that order below.

[¶2]   GGV refuses to accept that order, as she has done with other orders of the instant court, as well as the orders of other courts, for more than a decade. *GGV v. JLR,* 2002 WY 19, ¶¶ 5–10, 39 P.3d 1066, ¶¶ 5–10 (Wyo. 2002). Her challenge to the district court's order has virtually no basis in the applicable law or the operative facts of this case. Rather it is addressed in its entirety to her perversely obstinate view that the law should make exceptions for her. We will affirm the district court's order and will grant the Appellees' motions that costs and penalties on affirmance be awarded in their favor under W.R.A.P. 10.05.

Representing Appellant: Appellant, pro se.

Representing Appellee: Mary Elizabeth Galvan, Mary Elizabeth Galvan, P.C., Laramie, Wyoming.

Guardian Ad Litem: Mary Chinnock Petroski of Prehoda, Leonard & Janack, LLC, Laramie, Wyoming.

Before HILL, C.J., and GOLDEN, KITE, and VOIGT, JJ., and GUTHRIE, D.J.

HILL, Chief Justice.

[¶1]   By order entered on March 4, 2004, the district court held Appellant (GGV) to be in contempt of court because she had failed to pay attorney's fees and costs that this Court ordered her to pay to JLR, as well as

**ISSUES**

[¶3]   GGV states the issues as:

I.   Did the lower court unjustly resurrect debtor prisons by using criminal punishment to collect a purely civil debt?

II.   Was [GGV] denied her constitutional right to counsel under the United States Constitution?

III.   Did the lower court abuse its discretion during previous proceedings?

Appellees provide this statement of the issues:

A.   Whether it was an abuse of discretion for the trial court to impose a sentence of incarceration to enforce its orders and the

orders of the Supreme Court in a civil contempt proceeding.

B. Whether it was an abuse of discretion for the trial court to deny [GGV's] request for appointment of counsel in a civil contempt proceeding under the facts of this case.

C. Whether this Court has jurisdiction to consider [GGV's] challenge to proceedings predating or subsequent to the March 4, 2004 order on joint motions for order to show cause.

D. Whether [Appellees] are entitled to attorney's fees and costs against [GGV] pursuant to W.R.A.P. 10.05.

### FACTS AND PROCEEDINGS

[¶ 4]   The background for this case is found in our previous resolution of other issues that arose in this case.  *GGV*, ¶¶ 5–10. For convenience, we will refer to that case as *GGV I*.  In addition, as an adjunct to that appeal, by orders entered on March 12, 2002, we awarded JLR attorney's fees and costs in the amount of $5,403.16, as well as attorney's fees and costs to the GAL in the amount of $1,508.00.  These attorney's fees and costs were awarded in accordance with W.R.A.P. 10.05 (no reasonable cause for the appeal). Before *GGV I* was decided, the district court found GGV to be in contempt of the district court on March 2, 2001, for failure to make court-ordered payments to the GAL. No appeal was taken from that order.  It is not necessary that we set out the exact amounts now due Appellees from GGV because GGV does not challenge the accuracy of the amounts included in the district court's orders.

[¶ 5]   By order entered on January 31, 2003, GGV was held to be in contempt of court for failure to pay attorney's fees and costs to JLR, as well as GAL fees.  At that time, she was sentenced to serve a term of 180 days in jail unless she began making payments on the attorney's fees ($200.00 per month) and on the GAL fees ($100.00 per month) beginning on January 31, 2003, and continuing to make such payments until both accounts were paid in full.  GGV also was ordered to remit any tax refunds she received from the Internal Revenue Service to the district court, those sums to be applied to the attorney's fees and GAL fees.  GGV did not appeal that order.  Because GGV disobeyed the district court's January 31, 2003 order, a bench warrant was issued on February 12, 2003, for her arrest.  By February 21, 2003, GGV had made payments that brought her current through that date, and the district court quashed the arrest warrant.

[¶ 6]   In response to a renewed motion to issue a bench warrant filed by Appellees on March 4, 2003, once again documenting GGV's failure to obey the district court's January 31, 2003 order, GGV filed a motion asking the district court to reduce the sums she owed to a judgment.  After notice and a hearing, the district court entered an order on July 15, 2003, again finding GGV to be in contempt of the district court for much the same reasons as it had done earlier in the year and concluding that her violation of the court's order was "willful and intentional." That order also remanded GGV to the custody of the Albany County Sheriff and directed that she be held in custody until she had paid arrearages in the amount of $1,420.00.  The district court also denied GGV's motion to reduce the Appellees' awards of attorney's fees and costs to a judgment upon which execution could issue.  On July 21, 2003, GGV complied with the district court's order by paying the $1,420.00 in arrearages, and she was released from jail.  GGV did not appeal from that order.  On August 18, 2003, GGV again asked the district court to reduce the awards of attorney's fees and costs to a judgment.  That motion was set for hearing, but GGV withdrew it on September 26, 2003. GGV's attorney, who had represented her throughout the above-described proceedings, was permitted to withdraw as counsel for GGV on October 2, 2003.

[¶ 7]   On December 17, 2003, Appellees once again sought an order for a bench warrant, alleging that GGV continued to refuse to comply with the district court's orders. On December 31, 2003, GGV (now appearing *pro se* ) responded to that pleading by contending: The district court must reduce the Appellees' claims to a judgment; that the district court was acting as a "collection agency" for the Appellees; that she could not

be imprisoned for debt; and that she had, in good faith, tried to settle with the Appellees ($1,000.00 to counsel for JLR, and $500.00 to GAL). On January 22, 2004, the district court issued another order to show cause why GGV should not be held in contempt for her failure to obey the district court's earlier orders. That matter was set for hearing on February 10, 2004.

[¶ 8]  At the opening of the hearing, GGV asked the district court to appoint an attorney to represent her and to grant her a continuance. The district court declined to appoint counsel on the basis that the hearing was a civil proceeding. GGV did not specifically allege that she was indigent, or marshal facts to support a claim of indigence, though she did indicate she was not employed at that time. The district court also refused to grant a continuance principally because the motion was not timely filed. In her papers, GGV stated that she had attempted to obtain legal counsel, but had been unsuccessful in that effort. She conceded she had made no payments to Appellees since July of 2003. Continuing, GGV related that she had moved to Denver after her incarceration in July, but had been unable to find a job. She also apologized to the district court for her conduct and acknowledged, "It was very wrong what I did." GGV essentially conceded that she was at fault, that she could and should have been paying on the amounts due, and that if she had done so, the proceedings that day would have been unnecessary. She further testified that she lived with her parents in Centennial, Colorado, and did not have to pay for room and board. She also related that she had done some temporary work and odd jobs and earned from $100.00 to $500.00 a month. She asserted that she had applied for many jobs, but did not retain copies of any of the applications she submitted to employers or otherwise provide documentation of her job search. GGV admitted that she owned no property other than her car. She claimed that she had tried to sell her car for $2,000.00, but that was not accomplished. She also testified that she owed $3,000.00 to a bank on that car. GGV's testimony revealed that she was 43 years old, had earned a college degree in 2002, and thereafter had continued attending classes at the University of Wyoming seeking a second degree in education.

[¶ 9]  Throughout much of her testimony, GGV claimed that she had not understood the tenor or purport of the district court's various orders. GGV also had difficulty remembering how she spent her time during the periods when she did not make payments on the attorney's fees and costs she was ordered to pay. However, at the close of the hearing, GGV did express her complete understanding of what the district court had previously ordered her to do and what he was about to order her to do in the future.

[¶ 10]  The order from which this appeal is taken provided in pertinent part:

1.  On March 19, 2001, this Court entered an Order Holding Respondent in Contempt of Court on the Guardian ad litem's Motion for Order to Show Cause because of Respondent's willful failure to pay Guardian ad litem fees incurred by the Guardian ad litem in the underlying action, which fees include the amounts still owing to the Guardian ad litem by the Respondent.

2.  On January 31, 2003, this Court entered an Order holding Respondent, [GGV], in contempt of court for her failure to pay fees and costs awarded to the Petitioner by the Wyoming Supreme Court in the amount of $5,403.60 [sic] on March 12, 2002, and sentenced Respondent to a term of incarceration in the Albany County Detention Center of 180 days, which was suspended on the condition that she make regular monthly payments to the undersigned attorney in the amount of $200.00 on the last day of each month, beginning on January 31, 2003, and that she turn over to the Court for payment to the undersigned attorney and the Guardian ad litem any income tax refund she may receive, until said amounts are paid in full.

3.  Respondent continued to refuse to pay the fees and costs awarded the Petitioner and the Guardian ad litem by the Wyoming Supreme Court and to pay the Guardian ad litem fees pursuant to the schedule ordered by this Court on January 31, 2003, and refused and otherwise failed

to turn over her 2002 federal income tax refund following entry of the Order on Joint Motion for Order to Show Cause on January 31, 2003.

4. On July 11, 2003, hearing was held on a Joint Motion for Order to Show Cause filed by Petitioner and the Guardian ad litem. Following hearing, this Court revoked the suspension of Respondent's 180 day sentence and ordered her incarceration, conditioned on her payment of her arrears to that date.

5. On July 15, 2003, following [the] hearing, this Court entered an order revoking the suspension of Respondent's sentence for contempt of court pending her payment of $1,402.00 and further ordering Respondent to remain current in her monthly payments beginning July 31, 2003.

6. On July 21, 2003, Respondent paid the required $1,420.00 then owing, and was released from the Albany County Detention Center.

7. Since July 21, 2003, Respondent has made no payments towards the attorneys' fees and sanctions awarded to the Petitioner and the Guardian ad litem in this matter, nor has she made any payment towards the Guardian ad litem's fees and costs in the underlying action.

8. As of February 10, 2004, Respondent has a remaining balance of $4,271.84 on the attorney's fees and costs awarded to the Petitioner by the Wyoming Supreme Court and $2,308.76 on the attorney's fees and costs awarded to the Guardian ad litem by the Wyoming Supreme Court and her attorneys' fees and costs for the underlying action.

9. Respondent has a baccalaureate degree, and is employed or is capable of employment, and has the ability to pay the amounts ordered by the Wyoming Supreme Court and this Court.

10. The orders of the Wyoming Supreme Court and this Court are lawful orders of those courts.

11. Respondent's refusal to make the scheduled payments on the attorneys' fees and costs awarded by the Wyoming Supreme Court [to the Petitioner] and to the Guardian ad litem is intentional, willful and deliberate and without just cause or excuse.

12. Respondent is in contempt of this Court and the Wyoming Supreme Court. NOW THEREFORE, IT IS HEREBY ORDERED as follows:

1. That Respondent be, and she hereby is, held in contempt of court for failure to pay the attorney's fees and costs awarded to the Petitioner in the amount of $4,271.84.

2. That Respondent be, and she hereby is, held in contempt of court for failure to pay Guardian ad litem fees incurred in the above entitled action and the fees and costs awarded to the Guardian ad litem by the Wyoming Supreme Court, in the total amount of $2,308.76.

3. That Respondent be, and she hereby is, sentenced to a term of incarceration in the Albany County Detention Center of one hundred and eighty (180) days, said term of incarceration to be suspended on the terms and conditions set forth below.

4. That the Respondent be, and hereby is, ordered to pay to the Petitioner a sum of no less than $100.00 per month, on or before the 1st day of March, 2004, and that she continue to pay the sum of at least $100.00 per month on or before the first day of every month thereafter, until the award of attorney's fees to the Petitioner in the amount of $4,271.84 is paid in full.

5. That the respondent be, and she hereby is, ordered to pay to the Guardian ad litem the sum of no less than $50.00 per month, to be paid on or before the 1st day of March, 2004, and that she continue to pay the sum of at least $50.00 per month on or before the first day of every month thereafter, until the Guardian ad litem fees in the amount of $2,308.76 is paid in full.

6. That at such time as the Respondent is earning a net monthly income of $750.00, her monthly payment to the Petitioner's attorneys' fees and costs shall increase to $200.00 per month, and her monthly payment towards the Guardian ad litem's fees and costs shall increase to $100.00.

7. That the Respondent shall file her income tax returns each year and her W-2

statements each month with the Clerk of the District Court, Second Judicial District, in and for Albany County, Wyoming.

8. All payments shall be made through the Office of the Clerk of the District Court, Second Judicial District, in and for Albany County, Wyoming.

9. All terms and conditions of the Orders of this Court on the Joint Motion of the Petitioner and the Guardian ad litem entered on March 19, 2001, January 31, 2003 and July 15, 2003 not modified herein shall remain in full force and effect.

10. That the respondent be, and she hereby is, placed on notice that her failure to pay the sums due the Petitioner and the Guardian ad litem in any month or to turn over her income tax refunds on their receipt will result in the immediate implementation of the 180 day sentence of incarceration, and she shall not be released from incarceration until any balance of the fees and costs due and owing to the Petitioner and the Guardian ad litem at such time are paid in full.

## DISCUSSION

### Debtor's Prison and Right to Appointed Counsel

[¶ 11] GGV asserts that the district court's action resurrected debtor's prison in order for the Appellees to collect what she characterizes as a purely civil debt. Although her arguments are amorphous and supported only by the most scant authority, we will address them in a general way. It may well have been within the district court's discretion to reduce the sums owed Appellees to a judgment upon which they could have levied execution. However, the district court did not abuse its discretion in not doing so here because it was evident from the very lengthy record in this case that GGV was not a viable candidate for execution because she did not work regularly, studiously avoided full-time employment, and had no assets upon which execution could be levied. A district court may properly use its power of contempt to enforce payments such as those at issue here, and that is particularly so in domestic relations matters. *See* 17 Am.

Jur.2d *Contempt* §§ 124 and 125 (2004). Moreover, GGV forthrightly admitted that she had acted wrongly and deliberately in refusing to bend her will to the orders of the district court. It was apparent to the district court from the outset that the only effective tool available to it was its inherent power of contempt. *See Townes v. State*, 502 P.2d 991, 993 (Wyo.1972) ("A court's power to punish for contempt is a necessary and integral part of the independence of the judiciary."); *also see In re Mayne's Estate*, 345 P.2d 790, 795–96 (Wyo.1959) ("The petitioner, therefore, carries the keys of his prison in his own pocket."); and *see generally Connors v. Connors*, 769 P.2d 336, 343–48 (Wyo.1989).

[¶ 12] GGV contends that this was a criminal proceeding and she was, thus, entitled to additional procedural safeguards not afforded her by the district court. We have held:

We distinguish between criminal contempt and civil contempt by determining the purpose of the contempt order. *Anderson v. Anderson*, 667 P.2d 660, 662 (Wyo.1983); *Horn v. District Court, Ninth Judicial District*, 647 P.2d 1368, 1372–73 (Wyo.1982). The purpose of a civil contempt is to coerce a party into complying with a prior court order, while the purpose of a criminal contempt is to punish a party who failed to comply with a prior order. *GN v. State (In re C.N.)*, 816 P.2d 1282, 1285 (Wyo.1991); *Horn*, 647 P.2d at 1373. In other words: "If the penalty is intended to operate in a prospective manner so as to bring about compliance with an order of the court, then it relates to civil contempt. If, however, the penalty is unconditional and imposed to vindicate a prior transgression against the court, then criminal contempt is involved." *Anderson*, 667 P.2d at 662 (citing *Shillitani v. United States*, 384 U.S. 364, 370, 86 S.Ct. 1531, 16 L.Ed.2d 622 (1966)).

*Munoz v. Munoz*, 2002 WY 4, ¶ 10, 39 P.3d 390, ¶ 10 (Wyo.2002); *also see Horn v. Welch*, 2002 WY 138, ¶ 12, 54 P.3d 754, ¶ 12, (Wyo.2002); and *see generally* 1 Dan B. Dobbs, *Dobbs Law of Remedies*, §§ 2.8(1)–2.8(3) (2nd ed.1993).

[¶ 13] We are quite comfortable here in concluding that the proceedings were

480

in the nature of civil contempt. As can be gleaned from our recitation of the facts, GGV's due process rights were honored in all of the proceedings below, including ample notice, an opportunity to be heard, and a reasonable opportunity to employ counsel to represent her if she so desired.[1] Although some courts have held that an indigent contemnor may be entitled to appointed counsel even in civil contempt proceedings (where incarceration is a real possibility), we need not discuss that issue in detail because GGV did not offer any meaningful evidence to the district court that she was indigent. *See generally* Marjorie A. Caner, Annotation, *Right to Appointment of Counsel in Contempt Proceedings,* 32 A.L.R.5th 31 (1995 and Supp.2004).

[¶ 14] Under the circumstances of this case, the constitutional protection prohibiting imprisonment for debt[2] is not implicated. The order at issue here is not an order to pay a "debt" but an order to pay money arising from a status obligation. 1 Dan B. Dobbs, *Dobbs Law of Remedies,* § 2.8(2), at 193 (*Imprisonment for Debt*). For a discussion of the potential length of time (or the number of times) a "determined contemnor" may be jailed, *see Id.,* § 2.8(3), at 202–4.

**Abuse of Discretion**

[¶ 15] Our review of this issue is limited to those proceedings that resulted in the issuance of the district court's order of March 4, 2004. GGV asserts, without benefit of cogent argument or the recitation of pertinent authority, that the district court abused its discretion during previous proceedings, as well as in the instant proceedings. GGV could have appealed from the district court's previous orders, but did not. The time for filing appeals from those orders has long since passed. *See* W.R.A.P. 1.03, 1.05, and 2.01(a). Moreover, as those proceedings progressed, earlier orders of the district court

were subsumed into the current orders issued on the same subject. We have examined the record before us with care and conclude that the district court did not abuse its discretion.

**Penalties**

[¶ 16] Appellees ask that we impose penalties on affirmance. We hereby certify that there was no reasonable cause for the appeal. This appeal represents a continuation of GGV's intransigent disdain for the courts of this state and their processes. Within 15 days of the publication and filing of this opinion, each Appellee shall submit a statement of attorney's fees and damages to this Court for our review so that an appropriate award may be ordered. W.R.A.P. 10.05 and 10.06. After those orders have issued, the district court shall enforce those orders as it has done with our past orders, or as it might otherwise so enforce them in its sound discretion.

**CONCLUSION**

[¶ 17] We hold that GGV has not been imprisoned for debt, nor is she now threatened with imprisonment for debt. GGV was not entitled to counsel appointed at State expense in these proceedings, and she was afforded adequate time to employ counsel at her own expense had she desired to do so. The district court did not abuse its discretion in the proceedings below. The order of the district court is affirmed in all respects. This appeal will remain on the Court's docket for the purpose of assessment of attorney's fees and damages.

---

1. For a discussion of a civil contemnor's right to employ counsel, *see* Jack W. Shaw, Annotation, *Right to Counsel in Contempt Proceedings,* 52 A.L.R.3d 1002 (1973 and Supp.2004).

2. Wyo. Const. art. 1, § 5 provides: "No person shall be imprisoned for debt, except in cases of fraud." GGV recites a provision of the United States Constitution identical to that in the Wyo-

ming Constitution. There is no parallel provision in the United States Constitution. However, there is a federal statute that provides that no federal court may imprison a person for debt in any state wherein imprisonment for debt has been abolished. 16B Am.Jur.2d *Constitutional Law* § 627 (1998).