# IN THE SUPREME COURT, STATE OF WYOMING

## 2013 WY 16

### OCTOBER TERM, A.D. 2012

### February 8, 2013

STATE OF WYOMING, DEPARTMENT
OF FAMILY SERVICES,

Petitioner,

v.

S-12-0114

TANYA S. CURRIER and RONNIE
HAUCK,

Respondents.

*Original Proceeding*
*Petition for Writ of Review*
*From the District Court of Laramie County*
The Honorable Thomas T.C. Campbell, Judge

*Representing Petitioner:*
    Gregory A. Phillips, Wyoming Attorney General; Robin Sessions Cooley, Deputy
    Attorney General; Jill E. Kucera, Senior Assistant Attorney General; Jared
    Crecelius, Senior Assistant Attorney General.

*Representing Respondents:*
    No appearance.

*Before KITE, C.J., and HILL, VOIGT, BURKE, and DAVIS, JJ.*

NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of typographical or other formal errors so correction may be made before final publication in the permanent volume.

**KITE, Chief Justice.**

[¶1] This Court granted the State of Wyoming, Department of Family Services' (DFS) petition for a writ of review of the district court's ruling that due process requires the state to provide an indigent party with counsel in a civil contempt proceeding for non-payment of child support when incarceration is one of the possible penalties. We conclude that appointment of counsel is not required because Wyoming has sufficient substitute procedural safeguards to protect indigent obligors against the possibility of wrongful incarceration. Consequently, we reverse.

## ISSUES

[¶2] DFS presents the following issues for our review:

> I. Does the Due Process Clause of the United States Constitution, as interpreted by the United States Supreme Court in *Turner v. Rogers*, ___ U.S. ____, 131 S. Ct. 2507 (2011), give indigent litigants the right to appointment of counsel in child support civil contempt proceedings where incarceration is a possibility?
>
> II. If indigent litigants have a due process right to appointment of counsel in child support civil contempt proceedings, is the State of Wyoming Department of Family Services required to pay for the litigant's attorney's fees?

Respondents Tanya S. Currier (Mother) and Ronnie Hauck (Father) did not file briefs.

## FACTS

[¶3] In 2008, the district court entered a default judgment and order establishing Father's paternity of a child and ordering him to pay $228.00 per month in child support, which was the presumptive amount under the child support guidelines. On June 10, 2011, DFS filed a petition for an order to show cause as to why Father should not be held in contempt of court for failing to pay child support. The petition alleged he owed $9,681.25 in child support and attorney fees and costs, which included $7,996.25 to Mother and $1,685.00 to DFS. One of the possible sanctions for contempt included in the petition was "a jail sentence."

1

[¶4]    The district court held a hearing on September 12, 2011.[1]  Father appeared at the hearing without counsel and the district court advised him that he was entitled to appointed counsel at the state's expense if he was indigent.  Father completed an affidavit for appointed counsel and the district court appointed a public defender to represent him.  DFS filed an objection to the district court's order appointing counsel and the district court vacated the order with respect to the appointment of the public defender, presumably because public defenders do not handle these types of civil cases.

[¶5]    After that, however, the district court entered an order denying DFS's objection to appointment of counsel and appointing counsel.  The district court ruled that under the United States Supreme Court cases, *Turner v. Rogers,* ___ U.S. ___, 131 S.Ct. 2507, 180 L.Ed.2d 452 (2011) and *Mathews v. Eldredge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), "due process does require court-appointed counsel when the State of Wyoming, through legal counsel, brings a child support enforcement proceeding against an indigent defendant."  It then ordered DFS to make arrangements for compensation of counsel through any means available and have an attorney enter an appearance within fifteen days.

[¶6]    DFS filed a petition with this Court for a writ of review of the district court's decision, and we granted a writ.

## STANDARD OF REVIEW

[¶7]    The issue raised in this case is purely one of constitutional law; thus, our standard of review is *de novo.  Jacobsen v. State,* 2012 WY 105, ¶ 9, 281 P.3d 356, 358 (Wyo. 2012); *Tucker v. State,* 2009 WY 107, ¶ 11, 214 P.3d 236, 240 (Wyo. 2009).

## DISCUSSION

[¶8]    This Court has not previously considered the precise question presented in this case—whether an indigent litigant in a civil contempt case is entitled to appointed counsel when incarceration is a possible penalty.  In *GGV v. JLR,* 2005 WY 14, 105 P.3d 474 (Wyo. 2005), the appellant claimed she was denied due process because the district court did not appoint counsel to represent her in a civil contempt proceeding where she was jailed for failing to pay a prior award of attorney fees and guardian ad litem costs.  We noted that "some courts have held that an indigent contemnor may be entitled to appointed counsel even in civil contempt proceedings (where incarceration is a real possibility)," but ruled that we need not reach the question because GGV "did not offer any meaningful evidence to the district court that she was indigent."  *Id.,* ¶ 13, 105 P.3d at 480.

---

[1] It is not clear if this hearing was reported.  In any event, the record does not contain a transcript of the proceedings.

2

[¶9]    Prior to the United States Supreme Court ruling in *Turner,* 131 S.Ct. 2507, there was a split of authority among courts as to the "applicability of a 'right to counsel' in civil contempt proceedings enforcing child support orders." *Id.,* 131 S.Ct. at 2514. *See also*, M. Caner, *Right to Appointment of Counsel in Contempt Proceedings,* 32 A.L.R.5th 31 (1995 and Supp. 2012) and cases collected therein.  The United States Supreme Court ruled in *Turner* that due process does not automatically require appointment of counsel in child support contempt cases involving indigent obligors even when incarceration is a possibility. *Id.,* 131 S.Ct. at 2520.  A comprehensive review of that decision is necessary to our analysis in this case.

[¶10]  Turner was ordered to pay child support to Rogers by a South Carolina family court, but repeatedly failed to do so.  He was held in contempt and sentenced to jail on several occasions.  During the contempt proceeding at issue in the Supreme Court, both he and Rogers appeared without counsel.  At the conclusion of the hearing, the judge found Turner in willful contempt of court and sentenced him to serve twelve months in the county detention center.  He could purge himself of the contempt and avoid the jail sentence by paying his arrearage in full.  The judge did not make an express finding or otherwise address Turner's ability to pay the amount due. *Turner,* 131 S.Ct. at 2513-14.

[¶11]  Turner appealed, claiming the United States Constitution entitled him to appointed counsel at the contempt hearing.  The South Carolina Supreme Court ruled that, because the contempt was civil in nature, the right to government paid counsel was not applicable. He petitioned the United States Supreme Court for certiorari and, because of a split of authority among state and some federal courts, it granted the writ. *Id.* at 2514.

[¶12]  Although the Sixth Amendment to the United States Constitution guarantees indigent defendants the right to appointed counsel in criminal cases, including criminal contempt proceedings, it does not apply in civil cases.  *Id.* at 2516, citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963) and *United States v. Dixon,* 509 U.S. 688, 696, 113 S.Ct. 2849, 125 L.Ed.2d 556 (1993).   The Fourteenth Amendment's guarantee of due process does, however, apply to civil contempt actions. *Id.*  The Supreme Court reviewed other cases where it had considered whether a litigant has a right under the Fourteenth Amendment to counsel in civil matters and concluded that its precedent established an indigent litigant has the right to appointed counsel only when he risks being deprived of his liberty, and not in every one of those instances.  For example, under *Gagnon v. Scarpelli,* 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), a criminal offender does not ordinarily have the right to appointed counsel at a parole or probation revocation hearing. *Turner,* 131 S.Ct. at 2516-17.

[¶13]  In determining whether Turner was entitled to appointed counsel, the Court applied the well-known test from *Mathews,* 424 U.S. at 335, 96 S.Ct. at 903, to determine "what specific safeguards the Constitution's Due Process Clause requires in order to

make a civil proceeding fundamentally fair." The *Mathews* factors include: "(1) the nature of the 'the private interest that will be affected,' (2) the comparative 'risk' of an 'erroneous deprivation' of that interest with and without 'additional or substitute procedural safeguards,' and (3) the nature and magnitude of any countervailing interest in not providing 'additional or substitute procedural requirement[s].'" *Turner,* 131 S.Ct. at 2517-18, quoting *Mathews,* 464 U.S. at 335.

[¶14] Applying the *Mathews* factors to Turner's situation, the Court concluded the first factor, "the private interest that will be affected," argued strongly in favor of a right to counsel because that interest involves the possibility of loss of personal liberty by imprisonment. Due to the importance of the interest, it is critical to ensure accurate decision making with regard to the key "ability to pay" question because the answer ultimately determines whether the matter is civil or criminal in nature and whether the obligor will be held in contempt of court. *Id.* at 2518.

[¶15] Nevertheless, the Court stated that due process does not always require the appointment of counsel in civil proceedings even when incarceration is threatened and the opposing interests and the value of providing additional or substitute procedural safeguards must be considered. *Id.* The Court found three considerations in Turner's case that argued against due process requiring appointment of counsel:

> First, the critical question likely at issue in these cases concerns, as we have said, the defendant's ability to pay. That question is often closely related to the question of the defendant's indigence. But when the right procedures are in place, indigence can be a question that in many—but not all—cases is sufficiently straightforward to warrant determination *prior* to providing a defendant with counsel, even in a criminal case.
>
> Second, sometimes, as here, the person opposing the defendant at the hearing is not the government represented by counsel but the custodial parent *un*represented by counsel. . . . The custodial parent, perhaps a woman with custody of one or more children, may be relatively poor, unemployed, and unable to afford counsel. Yet she may have encouraged the court to enforce its order through contempt. She may be able to provide the court with significant information. And the proceeding is ultimately for her benefit.
>
> A requirement that the State provide counsel to the noncustodial parent in these cases could create an asymmetry of representation that would "alter significantly the nature of

the proceeding." Doing so could mean a degree of formality or delay that would unduly slow payment to those immediately in need. And, perhaps more important for present purposes, doing so could make the proceedings *less* fair overall, increasing the risk of a decision that would erroneously deprive a family of the support it is entitled to receive. The needs of such families play an important role in our analysis.

Third, as the Solicitor General points out, there is available a set of "substitute procedural safeguards," which, if employed together, can significantly reduce the risk of an erroneous deprivation of liberty. They can do so, moreover, without incurring some of the drawbacks inherent in recognizing an automatic right to counsel. Those safeguards include (1) notice to the defendant that his "ability to pay" is a critical issue in the contempt proceeding; (2) the use of a form (or the equivalent) to elicit relevant financial information; (3) an opportunity at the hearing for the defendant to respond to statements and questions about his financial status, (*e.g.,* those triggered by his responses on the form); and (4) an express finding by the court that the defendant has the ability to pay.

*Turner,* 131 S.Ct. at 2518-19 (citations omitted) (emphasis in original). The Court decided that these three considerations compelled a ruling that "the Due Process Clause does not *automatically* require the provision of counsel at civil contempt proceedings to an indigent individual who is subject to a child support order, even if that individual faces incarceration (for up to a year)." *Id.* at 2520 (emphasis in original).

[¶16] Of particular importance to the case at bar, the Court said that due process does not require the appointment of counsel when the person to whom the funds are owed is not represented by counsel and the trial court provides alternate procedural safeguards. The Court specifically stated that its decision did not address civil contempt proceedings where the child support payments are owed to the government because those proceedings resemble debt-collection proceedings and the government is likely to have representation. *Id.* Ultimately, the Supreme Court ruled that Turner's due process rights were violated because he did not receive counsel or the benefit of alternate safeguards. The trial court did not give him clear notice that his ability to pay would be a critical question at the contempt hearing or a form designed to elicit relevant financial information and did not make an express finding about his ability to pay. *Id.*

[¶17] The question left unanswered by *Turner* is directly presented here.[2] The district court in this case considered the *Mathews* factors and concluded that appointed counsel was required because DFS brought the action and was represented by counsel, creating an asymmetry in the proceedings.

[¶18] Given our standard of review is *de novo*, we will conduct our own analysis of the *Mathews* factors. The first factor, the private interest that will be affected, is Father's personal liberty. DFS prayed in its petition for an order to show cause as to why Father should not be held in contempt of court and for the court to impose "an appropriate penalty for said contempt," including "imposition of a jail sentence." As the Supreme Court said in *Turner,* "'the freedom 'from bodily restraint,' lies 'at the core of the liberty protected by the Due Process Clause.'" *Id.* at 2518, quoting *Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992). That interest, therefore, leans strongly in favor of a right to counsel.

[¶19] The second factor is the comparative risk of an erroneous deprivation of the private interest, with and without safeguards. *Id.* at 2518. This factor implicates the key "ability to pay" question which is often dispositive in these matters. The ability to comply with the court-ordered support requirement marks the dividing line between criminal and civil contempt and an incorrect decision could increase the likelihood of a wrongful incarceration "by depriving the defendant of the procedural protections (including counsel) that the Constitution would demand in criminal proceedings." *Id.* Wyo. Stat. Ann. § 20-2-310 (LexisNexis 2011) codifies the ability to pay requirement by requiring a showing that the parent has "willfully" violated a child support order. In *Secrest v. Secrest,* 781 P.2d 1339, 1342 (Wyo. 1989), we held unrefuted evidence that the father was financially unable to comply with the court's previous orders regarding the child's medical and insurance expenses justified finding him not in contempt of court.

[¶20] The district court concluded in this case that, because DFS was represented, failing to provide counsel to Father would result in an asymmetry that would make the proceeding unfair. *Turner,* by contrast, involved two unrepresented parties and concluded that allowing counsel would create an asymmetry of representation that would "'alter significantly the nature of proceeding.'" *Turner,* 131 S.Ct. at 2519, quoting *Gagnon,* 411 U.S. at 787. We agree that an asymmetry exists when DFS is represented

---

[2] Subsequent to *Turner*, a Washington court of appeals ruled that a defendant facing incarceration for nonpayment of legal financial obligations resulting from a criminal sentence is entitled to appointed counsel. *State v. Stone,* 268 P.3d 226, 234-35 (Wash. Ct. App. 2012). The court questioned whether *Turner* applied to the situation and ruled that, in any event, it would follow its binding state precedent requiring appointment of counsel under such circumstances. *Id.,* citing *Tetro v. Tetro,* 544 P.2d 17 (Wash. 1975). In *Liming v. Damos,* 2012 WL 5259200, *8 (Ohio 2012), the Ohio Supreme Court ruled that *Turner* did not compel appointment of counsel at a hearing to determine whether a prior suspended sentence for contempt should be purged. Due to the factual and procedural differences between these cases and the case at bar, we do not find them particularly instructive.

and the obligor is not; however, *Turner* and *Mathews* envision a balancing of the opposing interests and procedural safeguards. Consequently, the fact that DFS was represented is not dispositive. We must consider what procedures are in place or may be put in place to offset the lack of symmetry occasioned by DFS being represented while the obligor is not to determine the comparative risk of erroneous incarceration. *See, Young v. Young,* 2012 WL 6587624, *5 (N.C. Ct. App. 2012) (holding "*Turner* does not stand for the proposition that counsel is not required only when the opposing party is also unrepresented; rather it finds both that in such a scenario, counsel is not required if there are appropriate safeguards in place and that counsel is not '*automatically* required' in all civil contempt hearings for child support from indigent litigants.")

[¶21] The question of the obligor's ability to pay his child support is often closely related to the question of whether he is indigent. "[W]hen the right procedures are in place, indigence can be a question that in many—but not all—cases is sufficiently straightforward to warrant determination *prior* to providing an obligor with counsel, even in a criminal case." *Turner,* 131 S.Ct. at 2519. Appropriate safeguards identified in *Turner* include: (1) notice to the obligor that his "ability to pay" is a critical issue in the contempt proceeding; (2) the use of a form to elicit relevant financial information; (3) opportunity for the obligor to respond to statements and questions about his financial status; and (4) an express finding by the trial court that the obligor has the ability to pay. *Id.* at 2519. Turner did not receive the benefit of many of these safeguards as he was not given proper notice or a form to provide relevant financial information and the trial court did not make an express finding regarding his ability to pay. *Id.* at 2520.

[¶22] By contrast, the procedure employed in Wyoming contempt proceedings for failure to pay child support was described by the district court in this case as:

> The Respondent in this and all Child Support Enforcement matters are informed in the Petition, and by the Court, of the burden on the State to show a failure to pay court ordered child support is willful. Respondents are provided forms upon which they can set forth current income, asset and liability information and are given opportunity to explain any reasons they may have for failure to pay.

These procedures meet the notice and opportunity to be heard requirements set out in *Turner*. Given those procedures, it is hard to imagine what more appointed counsel could bring to the dialogue. In addition, district courts should utilize less formal courtroom procedures to give a *pro se* obligor a full opportunity to present a defense on the ability to pay issue. Such accommodations are encouraged in the Wyoming Code of Judicial Conduct: "It is not a violation of [the rule requiring judges to uphold and apply the law and perform all duties fairly and impartially] for a judge to make reasonable accommodations to ensure pro se litigants the opportunity to have their matters fairly

7

heard." Wyo. Code of Jud. Conduct, Rule 2.2, cmt. [4]. The district court must also make an express finding as to the obligor's ability to pay in order to determine whether the failure is willful or not. *See* § 20-2-310; *Secrest,* 781 P.2d at 1342. These safeguards weigh against requiring the appointment of counsel.

[¶23] The third *Mathews* factor requires consideration of the countervailing interest in not providing the additional safeguards, including the appointment of counsel. The provision of counsel in every case involving the state and an indigent obligor would result in delay, as counsel would have to be located, appointed and consult with the obligor. Such delay would slow payments to needy families and undermine the ultimate fairness of the proceedings without, as we have said, any apparent significant benefits. Further, the fiscal and administrative burden to the state to provide counsel in all such cases would be considerable.

[¶24] The procedural safeguards and the disadvantages of providing counsel outweigh the lack of symmetry occasioned by DFS being represented while the obligor is not. We conclude, therefore, that indigent obligors are not entitled to appointed counsel in child support enforcement contempt proceedings, even if DFS is the opposing party and is represented by counsel, provided, however, the procedural safeguards noted in this case are made available. We do leave the door open, as the United States Supreme Court did in *Turner,* to the possibility of due process requiring appointment of counsel in an "unusually complex case where a defendant 'can fairly be represented only by a trained advocate.'" *Turner,* 131 S.Ct. at 2520, quoting *Gagnon,* 411 U.S. at 788, 93 S.Ct. 1756. There is nothing in this case that indicates Father's case is unusually complex.

[¶25] In deciding that appointed counsel is not required in child support enforcement actions involving indigent obligors, we are also mindful that there are other procedures available for parents to obtain modification of their child support obligations when they are unable to comply. "'Under our statute the obligation of support is a continuing one; it is also one which is at all times subject to change ***upon proper request to the court for modification or clarification contingent upon a change in circumstances*** of the parties.'" *Erhart v. Evans,* 2001 WY 79, ¶ 15, 30 P.3d 542, 546 (Wyo. 2001), quoting *Redman v. Redman,* 521 P.2d 584, 587 (Wyo. 1974)*. See also*, Wyo. Stat. Ann. § 20-2-311 (LexisNexis 2011) (setting forth requirements for modification of child support). This Court has approved forms for *pro se* litigants to use in seeking modification of child support. Family Law Pro Se Forms, http://www.courts.state.wy.us/DandCS.aspx. The forms include sections for providing all of the relevant financial information. Thus, an obligor who is actually unable to pay his child support has the obligation and means to modify it. The availability of this procedure further ameliorates any concerns about the fundamental fairness of allowing an indigent obligor to face the possibility of incarceration for failing to comply with a child support order without appointed counsel.

8

[¶26] We, therefore, reverse the district court's ruling that Father is entitled to appointed counsel and remand for further proceedings consistent with this decision. Our resolution of the first issue makes it unnecessary to consider the second.

[¶27] Reversed and remanded.